PEOPLE v DAJNOWICZ

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—PRIVACY—CONSTITU-
TIONAL LAW.

> The general test to determine whether a search without a war-
> rant is illegal is whether the person whose property is searched
> has a reasonable expectation of privacy with respect to it (US
> Const, Am IV).

2. SEARCHES AND SEIZURES—WITHOUT WARRANT—PRIVACY—FIRE
DAMAGE.

> The fact that a person's home is gutted by fire, whether by arson
> or otherwise, cannot per se deprive him of the protection
> guaranteed by the Fourth Amendment, since there is no basis
> to conclude that he no longer has an expectation of privacy
> because he cannot occupy the dwelling for a certain length of
> time (US Const, Am IV).

3. SEARCHES AND SEIZURES—SEARCH WARRANT—DWELLINGS.

> A search warrant must be obtained prior to a search of a burned-
> out dwelling unless the owner has evidenced his intention to
> relinquish the privacy of his dwelling, except where an immedi-
> ate investigation must be made to check for persons or valua-
> bles, or to protect the safety and general welfare of the public.

4. EVIDENCE—SEARCHES AND SEIZURES—WITHOUT WARRANT—ILLEGAL
SEARCH.

> Evidence seized without a warrant five days after a fire at a
> defendant's burned-out dwelling is not admissible to show that
> arson was committed since it was obtained as the result of an
> illegal search and seizure.

Appeal from Charlevoix, Charles L. Brown, J.
Submitted Division 3 June 9, 1972, at Grand Rap-
ids. (Docket No. 12778.) Decided October 25, 1972.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 47 Am Jur, Searches and Seizures § 31.
62 Am Jur 2d, Privacy § 4.
Right of privacy, 138 ALR 22 s. 168 ALR 446 s. 14 ALR2d 750.

William Dajnowicz was charged with arson. His motion to suppress certain evidence was denied and defendant appeals by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Harvey C. Varnum,* Prosecuting Attorney, for the people.

*Liberson, Fink, Feiler, Crystal, Burdick & Schwartz, P. C.* (by *Neil H. Fink* and *Peter H. Shumar),* for defendant on appeal.

Before: R. B. BURNS, P. J., and LEVIN and TARGONSKI,* JJ.

TARGONSKI, J. The defendant appeals, pursuant to an order of this Court granting the defendant's application for leave to appeal, from the trial court's refusal to suppress certain evidence.

The defendant is presently charged with arson. MCLA 750.72; MSA 28.267. On December 31, 1968 the defendant's dwelling was gutted by fire. The Chief of the East Jordan Fire Department, who responded to the alarm, observed that the fire was hard to extinguish and "kept springing back". The chief also concluded that the intensity of the fire was not normal.

On the following day, January 1, 1969, the fire chief returned to the scene and conducted an investigation of the dwelling. He determined that two separate fires had occurred and that the points of origin had no apparent natural cause.

After this initial investigation, assistance was requested from the Fire Marshal Division of the Michigan State Police. A detective from that

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

agency investigated the premises on January 6, 1969. The detective also determined that there were two separate fires. On January 7, 1969 Officer Parks and another detective from Arson Investigation examined the premises. During this investigation, the officers took photographs and collected samples of debris. These samples were subjected to chemical analysis revealing that they contained fuel oil, a fire accelerant. The officers returned at a later date, which they could not recall, and collected more samples.

The prosecution sought to introduce this evidence at the defendant's trial. The defendant moved to have this evidence excluded on the ground that it was the result of an illegal search and seizure. After hearing arguments of counsel, the trial court denied defendant's motion. From this ruling, the defendant appeals.

The statute under attack is MCLA 29.6; MSA 4.559(6) which provides:

"Sec. 6. The commissioner or any officer is authorized to investigate and inquire into the cause or origin of any fire occurring in this state resulting in loss of life or damage to property, and for such purpose may enter, without restraint or liability for trespass, any building or premises and inspect the same and the contents and occupancies thereof."

The thrust of defendant's attack on this legislation is that it violates defendant's fundamental right to be secure from unreasonable searches and seizures as provided by the Fourth Amendment to the United States Constitution because it authorizes searches of dwellings without a search warrant.

The first issue that this Court must determine is whether a warrant must be obtained prior to the

investigation of the cause and origin of fires. As a general rule, searches without warrants are per se unreasonable and evidence obtained by an illegal search must be excluded. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081; 84 ALR2d 993 (1961). However, court decisions have recognized the following exceptions to this rule:

1. A search which is incident to and contemporaneous with a lawful arrest, and limited to the person arrested or the area within his immediate control, may be made without a search warrant. *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969).

2. A search of the premises made by an officer while he is in "hot pursuit and lawfully looking for a suspect" is valid even though a search warrant had not been obtained. *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

3. Where an individual is in police custody and will remain so, the police may inventory his property held for safekeeping but only to the extent the circumstances show it was necessary for their protection. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

4. A search may be valid without a warrant if the subject agreed to the search. *Frazer v Cupp,* 394 US 731; 89 S Ct 1420; 22 L Ed 2d 684 (1969).

5. Searches without warrants have been upheld where there is not sufficient time to get a warrant and immediate action is necessary to prevent the loss of evidence as long as the officer had sufficient probable cause. *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

Applying the first four exceptions to the facts in the instant case, it is evident that they are not applicable. Therefore, if this warrantless search of the defendant's premises is to be valid it must rely on the emergency exception to the warrant requirement. A search of Michigan law reveals that there is no decided case which applied this excep-

tion to a factual situation similar to the present case.

However, several other jurisdictions have decided cases similar to the one presently before this court. In *State v Rees,* 258 Iowa 813; 139 NW2d 406 (1966), an arson investigation, instituted immediately after the fire, was continued over a period of approximately five weeks without a warrant. That Court upheld the search and reversed the lower court suppression of evidence. Although the Court rejected the theory that a search warrant was needed, it qualified its holding in the following manner:

"The question is not before us but it may be that the defendant could have, after a reasonable time for completion, terminated the investigation by telling the investigators to stay out. In that event, further search and seizure would have required a search warrant. However, the record is silent as to any search beyond the limits of the statutory mandate or over any objection, timely or otherwise, by the defendant." *State v Rees, supra,* at 822; 139 NW2d at 411.

In the instant case, the defendant was hospitalized during the period of the search and was never contacted by the authorities until it had been completed. Therefore, under the *Rees* rationale, the search may have been invalid in this case due to the fact that the defendant was not able to object.

However, we must reject the *Rees* decision on strictly legal grounds. The majority in *Rees,* in reaching its decision, relied on *Frank v Maryland,* 359 US 360; 79 S Ct 804; 3 L Ed 2d 877 (1959). In *Frank,* the Court had allowed public health officials to inspect residences without a warrant, to determine whether there were any ordinance violations. This aspect of the *Frank* holding, which

was relied on in *Rees,* was rejected in *Camara v Municipal Court,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

We feel that *Camara* and not *Frank* is controlling and warrants discussion at this point. In *Camara,* a municipal ordinance allowed inspectors to inspect homes without obtaining a search warrant. The petitioner denied entrance to a health inspector because he had not obtained a search warrant. The petitioner was convicted of refusing to allow the inspector entrance to the premises. The Court, in finding the conviction unconstitutional, held:

"In summary, we hold that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual, and that the reasons put forth in *Frank v Maryland* and in other cases for upholding these warrantless searches are insufficient to justify so substantial a weakening of the Fourth Amendment's protections." *Camara v Municipal Court, supra,* at 534; 87 S Ct at 1733; 18 L Ed 2d at 938.

*Camara* is relevant to our decision on two grounds. If the investigation were administrative *Camara* specifically would bar such a search. This is reinforced by the fact that the Michigan legislature has adopted the *Camara* holding and requires a warrant in inspection cases where the occupant has denied the inspector entry. MCLA 125.527; MSA 5.2891(7).

However, the facts show that the search in this case took the form of a criminal investigation. Despite plaintiff's contention to the contrary, *Camara* is still applicable to the instant case. It seems

obvious to this Court that if a warrant is required in instances where there is an administrative inspection, a warrant is even more necessary where a person is under criminal investigation.

The need for a warrant, where the investigation is criminal, was recognized in *State v Buxton,* 238 Ind 93; 148 NE2d 547 (1958). In *Buxton* a fire occurred in a restaurant and a day later the fire marshal entered the premises without a warrant, and seized certain evidence which led to the conviction of the defendant. That Court, in reversing the conviction, stated:

"Under the facts before us, it cannot well be maintained that the search made was a mere civil inspection and, even if it began as such, as the state contends it may have, no good reason is shown why a search warrant was not obtained at the point in time when evidence believed to be incriminating was discovered. From the point in time, when the investigation was conducted for the purpose of obtaining incriminating evidence against the owner of the property, a search warrant was necessary." *State v Buxton, supra,* at 100; 148 NE2d at 551.

In *Swan v Superior Court,* 8 Cal App 3d 392; 87 Cal Rptr 280 (1970), the police began an investigation of a building that had been gutted by fire on the same day that the fire had been extinguished. The police entered the boarded-up building without a warrant and ten days later continued their investigation. That Court found the evidence obtained from this investigation inadmissible. This holding was based on the fact that the police had sufficient time to secure a warrant and that the search could not be sustained on the ground that it fell within one of the recognized exceptions to the rule that a search warrant is necessary.

The final case that must be discussed is *State v*

*Vader,* 114 NJ Super 260; 276 A2d 151 (1971). The facts in *Vader* indicate that a residential fire on January 2, 1970 rendered a dwelling uninhabitable and caused the death of a child. Authorities obtained a search warrant on January 3, searched the dwelling, took photographs and confiscated certain items. A return on the warrant was made on January 5; the authorities went back on January 6 and gained more evidence relating to arson. The defendant moved to suppress the evidence gained on January 6. The appellate court rejected this claim on the following grounds:

"We conclude that the police investigation as to the cause of this fire did not constitute a search within the meaning and scope of the Fourth Amendment, and that a search warrant was not needed. The basic purpose of the Fourth Amendment is the protection of an individual's privacy and the security of his home. Here, the premises had been rendered uninhabitable by a fire. All utilities had been disconnected. No one was occupying the house, the doors and windows of which were broken. The fire was of a suspicious origin and had resulted in the death of child. Under these circumstances, the prompt, on-the-scene investigation of the fire by the authorities did not infringe on defendant's right of privacy or the security of his home and was not a Fourth Amendment search requiring a search warrant." *State v Vader, supra,* at 262; 276 A2d at 152.

Although the facts of that case are close to those facing this Court, we must disagree with the reasoning used in reaching its decision. The essence of the *Vader* opinion is that a home gutted by fire is not within the protection of the Fourth Amendment. We agree that in many instances a house is generally uninhabitable after a severe fire. However, the gutted building is still the person's property. In *Swan v Superior Court, supra,* that Court rejected the line of reasoning as used in *Vader:*

"The requirement for a search warrant is not limited to the search of a habitable dwelling house. The Fourth Amendment also protects against the search of the contents of other *closed* objects." (Emphasis added) *Swan v Superior Court, supra,* at 397; 87 Cal Rptr at 282.

The general test to determine whether an illegal search has taken place is whether a person has a reasonable expectation of privacy. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967). There the Supreme Court stated:

"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection [cases cited]. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v United States, supra,* at 351–352; 88 S Ct at 511; 19 L Ed 2d at 582.

In the instant case, there is no showing that the defendant evidenced any intent to relinquish the privacy of his dwelling to the eyes of the public. The house was still standing and his personal effects were still in his home. The mere fact that a person's home is gutted by fire, whether by arson or otherwise, cannot per se deprive him of the protection guaranteed by the Fourth Amendment. There is no basis to conclude that a person no longer has an expectation of privacy due to the fact that he cannot occupy the dwelling for a certain period of time. It must be shown that the defendant intended to abandon his expectation of privacy which this record fails to show.

Based on the above analysis, we hold that a search warrant must be obtained prior to a search of burned-out premises. However, we must, in the public interest, place a limitation on this holding.

In many instances a fire investigator must have immediate access to a dwelling which was gutted by fire. Some of the reasons for this need are to make sure the fire is out, to check to see if there are persons or valuables inside, and numerous other factors which must be determined to protect the safety and general welfare of the public.

The rule that searches must be made pursuant to a warrant is subject to certain well-defined exceptions. In *Camara,* the Court recognized one exception to the rule that warrants must be obtained for the purpose of making administrative investigations. This exception the Court stated:

"Since our holding emphasizes the controlling standard of reasonableness, nothing we say today is intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations." *Camara v Municipal Court,* 387 US 523, 539; 87 S Ct at 1736; 18 L Ed 2d at 941.

We adopt this limitation to the rule that a warrant is required when fires are being investigated. However, this limitation cannot control the instant case for the simple reason that there was no emergency when the search was made. The initial investigation made on the day of the fire and perhaps the investigation on the following day as well can be justified by the fact that it was necessary to stop spot fires and determine that the house would not blaze anew and endanger the lives and property of adjacent owners. There was a lapse of approximately five days in which a warrant could have been obtained before the State Police began their search. Another factor that is present in this case is that whereas the first investigation can be justified as an emergency situation, the second search was for the purpose of determin-

ing whether an arson had been committed and to gain evidence to support this claim. Therefore, due to the lapse of time and the opportunity to obtain a search warrant, the evidence seized must be excluded.

The next issue that faces this Court since we have held that a warrant is generally required is: does this render MCLA 29.6; MSA 4.559(6) unconstitutional? At the outset it must be noted that Fire Prevention Acts are presumptively constitutional. *In re Groban,* 352 US 330; 77 S Ct 510; 1 L Ed 2d 376 (1957). The statute under attack does not per se allow officers to enter the premises without a warrant. In fact, the statute does not address itself to the subject of whether or not search warrants are required. Other jurisdictions, in treating similar provisions, have read the warrant requirements into the appropriate provisions, thus finding the laws to be constitutional. *State v Buxton, supra.* Since we feel that this reasoning is sound, we apply it to the statute presently before this court, and hold that section of the statute to be constitutional.

We distinguish this case from *People v Bailey,* 42 Mich App 359 (1972), on the basis that in the latter case the material procured by a second examination of the scene of the fire, 12 days after the fire, was at the express invitation of the defendant.

Reversed and remanded.

All concurred.