PEOPLE v KULICK

1. FIRES—INVESTIGATIONS—STATE POLICE—TRESPASS—IMMUNITY.

   The commissioner and officers of the state police are authorized to investigate and inquire into the cause or origin of any fire occurring in this state resulting in loss of life or damage to property, and for such purpose may enter, without restraint or liability for trespass, any building or premises and inspect the same and the contents and occupancies thereof (MCLA 29.6).

2. CONSTITUTIONAL LAW—RIGHT TO PRIVACY—FIRES—INSPECTION OF PREMISES.

   The constitutional prohibitions of the Fourth Amendment are designed to protect a person's right to privacy; the right to privacy in a partially burned dwelling after a fire is not paramount to the right of the public to a reasonable inspection of premises damaged by fire in the interests of public safety and detection of incendiary fires.

3. ARSON—SEARCHES AND SEIZURES—SEARCH WITHOUT WARRANT—INVESTIGATION OF PREMISES—CONSENT OF OWNER—EVIDENCE OBTAINED.

   A search without a warrant of a burned building, conducted to determine whether a fire was of incendiary origin, was lawful where the appearance of two separate and unrelated fires in the building raised suspicions of arson, the entire investigation was concluded within 24 hours after discovery of the fire, and no protest was made by the owner of the building; therefore, evidence obtained by the search, in a prosecution of the owner for arson, is admissible against him.

Appeal from Detroit Recorder's Court, Elvin L. Davenport, J. Submitted Division 1 October 16, 1974, at Detroit. (Docket No. 17184.) Decided December 5, 1974. Leave to appeal applied for.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 35 Am Jur 2d, Fires §§ 3, 4.

Richard Kulick was charged with the burning of real property, burning of personal property, and burning of insured property with intent to defraud. Defendant moved to suppress evidence. Motion denied. Defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*S. Allen Early, Jr.,* and *Howard J. Katz,* for defendant.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and CARLAND,* JJ.

CARLAND, J. The defendant was the owner and operator of a retail furniture business in the City of Detroit. On Sunday, February 28, 1971, between four and four-thirty p.m., a fire occurred on the premises from which the business was conducted. In response to a call from those fighting the fire, two members of the arson squad arrived at the scene about five-fifteen p.m. At the time of their arrival, the fire had apparently been extinguished but as a precautionary measure the firemen were still checking the building for undetected burning embers. The two arson investigators were taken to the basement, shown the remains of the fire and proceeded to investigate as to the cause thereof. The investigation produced no evidence that the fire was of an accidental origin, although it ap-

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

peared that there had been two separate and unrelated fires in the basement of the establishment. Having made this determination, these officers left the premises and never returned. They did, however, file a report indicating that the fire was of an incendiary origin and not accidental. One of them testified at the preliminary examination that upon their arrival at the scene the firemen believed that the fire had arisen as a result of arson. They further testified that while at the scene either the manager or the owner was present and raised no objection to this part of the investigation. Neither does the defendant in this appeal.

The investigation was continued the next day, March 1st, by Lt. Robert C. McClary of the arson squad, who with another officer arrived at the premises shortly after the opening of business. The owner was asked for, and a person identified as the defendant came forward. The officers identified themselves and explained that they proposed to continue the investigation as to the cause of the fire. The owner was requested to point out the area of the fire and, in response, he took two steps toward and pointed to the basement stairs. Although the owner was aware of the purpose of the officers' visit, he offered no objection and without further interrogation they proceeded to the basement.

Upon entering the basement, a thorough investigation was conducted of the physical conditions then existing and the conclusion was drawn that the fire had been deliberately set. Photographs were taken and samples of the debris were removed from the premises. This portion of the investigation consumed only a short period of time.

Prior to leaving the building, the defendant was asked to come to the fire marshal's office for an interview and when on March 3, 1971 he arrived at this office, he was arrested under a three-count warrant charging him with the burning of real property, MCLA 750.73; MSA 28.268; burning of personal property, MCLA 750.74; MSA 28.269; and the burning of insured property with intent to defraud, MCLA 750.75; MSA 28.270. Following a preliminary examination, the defendant was bound over for trial.

Apparently, no trial date was set, since on January 31, 1972, a motion to suppress the evidence on constitutional grounds was filed, which motion was denied on April 14, 1972. The defendant maintained that the search and seizure here involved without a search warrant was an unlawful search and seizure and in violation of defendant's rights under the provisions of US Const. Am IV, and Michigan Const 1963, art 1, § 11. On December 18, 1972, the defendant filed a motion seeking a rehearing of his motion to suppress in light of the decision in *People v Dajnowicz,* 43 Mich App 465; 204 NW2d 281 (1972). This last motion was heard and denied on February 1, 1973 on the basis that the search was conducted with the consent of the defendant.

Leave to appeal the interlocutory order of denial was granted August 7, 1973. The case is now here to be heard upon the merits of the motion to suppress and our sole question becomes one of determining the validity of the search of March 1, 1970, without a warrant.

By reason of the finding by the trial court that the defendant had consented to the search thus obviating the necessity for a search warrant, the parties have confined themselves largely to the

question of whether consent was or was not given. Since leave in the instant case was granted prior to the decision in *People v Tyler,* 50 Mich App 414; 213 NW2d 221 (1973), and while only *Dajnowicz, supra,* was before the Court, it is apparent that *Tyler* must be considered in disposing of the issue here presented.

In neither *Dajnowicz* nor *Tyler* was the issue of whether consent had been given before the Court. Since we dispose of the question before us on other grounds, we write as though no consent had been specifically given. Therefore our question is as follows:

"Do the above cited constitutional provisions, absent consent by the owner, require the issuance of a search warrant prior to the investigation of a burned building which is conducted to determine whether the fire was of incendiary origin, where suspicions of such fact are raised during the process of extinguishing the fire or in the search for undetected embers?"

*Dajnowicz* determined such consent was required before investigation without a warrant. To the contrary, it was held in *Tyler* that because of the nature of the investigation being conducted it might validly proceed without either consent or warrant. The *Tyler* court in criticism of the language used in *Dajnowicz,* said on page 419:

"The fallacy in the language quoted is that the investigation of a fire to determine if arson has been committed does not place a person under criminal investigation. It places the cause of the fire under investigation."

In both of the cited cases, certain circumstances were revealed during or shortly after the fire indicating the possibility of arson. In our case, the fact of two separate and unrelated fires raised

these suspicions. The instant case is to be distinguished by the fact that the entire investigation was concluded within less than 24 hours after the discovery of the fire, while in the other cases they were carried out over protracted periods of time. Further, it should be noted again that no protest was made by the defendant at any time.

The investigations in all cases were performed at least under the color of right by virtue of the provisions of a statute found to be constitutional in *Dajnowicz.* MCLA 29.6; MSA 4.559(6) provides:

"The commissioner or any other officer is authorized to investigate and inquire into the cause or origin of any fire occurring in this state resulting in loss of life or damage to property, and for such purpose may enter, without restraint or liability for trespass, any building or premises and inspect the same and the contents and occupancies thereof."

Since the officers were thereby authorized to investigate and inquire into the cause or origin of any fire "without restraint", it seems strange to hold that a statute though constitutional is yet unusable. We liken the powers herein granted by this statute to those granted to coroners or medical examiners in case of death from unknown causes or where violence is either evident or suspected. In neither instance is the inquiry of an accusatory nature, but seeks only to find the cause of a known fact, that of death or fire. Not until evidence of an unnatural or illegal cause is produced does the inquiry turn to a search for the one responsible. We therefore adopt the reasoning in *Tyler* as to what is being investigated under the statute. The suspicions of the officers do no more than to justify the exercise of the statutory powers. Without such suspicion, the inquiry would not take place.

While we agree with certain statements of the law appearing in *Camara v Municipal Court of the City and County of San Francisco,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967), we do not believe the decision therein to be controlling of the issue now before us. Another panel of this Court in *People v Bailey,* 42 Mich App 359; 202 NW2d 557 (1972), quoted with approval the language of *Camara, supra,* where the Court, at 528 stated:

"The basic purpose of this [Fourth] Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."

However, *Bailey* went on to say on page 364:

"We see no invasion of defendant's privacy or security as a result of the investigation of the destroyed premises. There was no violation of defendant's Fourth Amendment rights as a result of the investigation."

To a like effect is the holding in *State of Montana v Murdock,* 160 Mont 95; 500 P2d 387 (1972), where on page 103 it is stated:

"Furthermore, the constitutional prohibitions are designed to protect a person's right to privacy; it can hardly be contended that the right to privacy in a partially burned dwelling after a fire is paramount to the right of the public to a reasonable inspection of premises damaged by fire in the interests of public safety and detection of incendiary fires."

Here also we are unable to perceive that this investigation resulted in an invasion of the defendant's privacy or security. We hold that the investigation was lawfully commenced on February 28th, and that the events of March 1st were only a continuation of a search valid in its inception. That being so, we do not reach nor decide the

question of whether consent was actually given by the defendant.

Had the defendant made protest, it might well have been the better part of judgment had the search been delayed until a warrant was obtained, but lacking protest, we believe that the course pursued by the officers was a practical manner of inquiry as to the cause of the fire. In so concluding, we agree with the language found on page 539 of *Camara, supra:*

"Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused."

For the reasons given we find that no constitutional right of the defendant was violated through the investigation here conducted and hold the search or investigation of the officers to have been reasonable. The decision denying the motion to suppress is affirmed.

All concurred.