THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALLAN R. PATRICK, Defendant-Appellant.

Fourth District   No. 13324

Opinion filed September 23, 1976.

Yoder, Yoder, Luedtke & Hartweg, of Bloomington (Alan L. Sternberg and Jerry N. Raymer, of counsel), for appellant.

Paul R. Welch, State's Attorney, of Bloomington (G. Michael Prall, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

Defendant was tried before a jury in McLean County and found guilty of committing arson in violation of section 20—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1973, ch. 38, par. 20—1). Defendant's co-defendant was his wife who was acquitted on the same charge. Defendant was sentenced to 5 years' probation and was required to make restitution in the amount of $7,886.40 plus costs to be paid at the rate of $30 per week. Defendant appeals his conviction.

Defendant urges two issues on appeal: (1) that evidence seized without a warrant by fire officials and used at trial should have been suppressed; and (2) that he was not found guilty beyond a reasonable doubt because his co-defendant was acquitted on the same evidence on which the jury found him guilty.

The facts giving rise to this appeal concern a fire which occurred in the early morning hours of January 13, 1974, at defendant's residence in Arrowsmith, Illinois. The fire did not totally destroy defendant's dwelling, but extensively damaged certain portions. According to the defendant, the fire might have been caused by a malfunction in the furnace or the electrical system. Earlier that morning, defendant experienced difficulty with the furnace and took his children to a neighbor's home for the remainder of the night; however, defendant and his wife returned to their home to restart the furnace.

Immediately after the fire was extinguished, the fire chief, James Wick, conducted an inspection of the premises as required by statute. The fire chief was attempting to determine the origin of the fire and to ascertain whether it had been completely extinguished. He checked the furnace at the request of the defendant and found it to be in working order. During his inspection, Wick noticed certain burn patterns on the stairwell leading to the second story, although he found no evidence of a surrounding fire. He completed his investigation around noon on January 13. Suspecting arson, he immediately contacted the State Arson Bureau.

The next morning, around 9 a.m., Lawrence R. Metzelaars, an arson investigator, arrived at the scene of the fire. He was accompanied by Chief Wick and two other individuals. Metzelaars first examined the locations in the home where fire might have occurred, including the areas around the furnace, wiring, and water heater. He concluded that the fire could not have started in any of these areas; however, he discovered four other locations where the fires had occurred, to wit: the utility room doorway; the kitchen; the stairwell leading to the attic; and the hallway. Defendant and his wife were present during Metzelaars' investigation and they observed him removing samples of woodwork in the suspected areas.

The samples taken by Metzelaars were forwarded to the State Crime Lab, where they were analyzed. Results from the tests performed on the samples revealed that certain accelerants were present in the samples. The tests, however, did not conclusively establish the specific identity of the accelerants.

Later the same afternoon after Metzelaars had concluded his investigation, defendant and his wife were questioned by Metzelaars at the Arrowsmith Fire Station. On June 7, 1974, defendant and his wife were indicted for arson.

The defendant filed a motion to suppress evidence on October 2, 1974, alleging that on January 13, and 14, 1974, the authorities conducted a warrantless search of his residence and seized certain items of physical evidence. The defendant contended that the evidence should be suppressed since no search warrant was issued. The search was not

incident to a lawful arrest, nor was it made with the consent of the defendant. A hearing was held on the motion at which the defendant testified. He stated that the kitchen and back bedroom of the house were totally destroyed, but that the front of the house was intact, and that there were many items of furniture and personal property still in the house at the time the authorities made their alleged illegal search and seizure. Defendant stated that he never gave anyone permission to search his home, nor did anyone from the fire department request his permission. Defendant was never presented with a search warrant.

Defendant's wife, Jacquelyn E. Patrick, also testified for the defense. She stated that she gave no one permission to search her home, although she admitted on cross-examination that she did not request any of the investigators to leave. On January 20, 1975, the court entered an order overruling defendant's motion to suppress.

The matter then went to a jury trial. The evidence which was the subject of defendant's motion to suppress was offered and received into evidence over defendant's objection. Defendant was found guilty while his wife was acquitted. Defendant filed a motion for new trial alleging that the court erred in denying his motion to suppress evidence and that his guilt had not been proved beyond a reasonable doubt. Defendant's motion was denied and he appeals.

Defendant argues that he was denied a fair trial because the circuit court failed to suppress certain physical evidence obtained without a search warrant. It is defendant's main contention that an arson investigator must secure a search warrant to enter premises after a fire has occurred when the investigation is not contemporaneous with the fighting of a fire and all the fire personnel and equipment have left the scene. Defendant reasons that the warrant requirement of the fourth amendment to the United States Constitution is mandatory unless the situation falls within the exceptions to the warrant rule which, defendant alleges, are inapplicable to the instant case. This issue is one of first impression in this jurisdiction and defendant has called our attention to numerous cases from other jurisdictions in support of his position. *E.g.,* *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727; *See v. City of Seattle* (1967), 387 U.S. 541, 18 L. Ed. 2d 943, 87 S. Ct. 1737; and *People v. Dajnowicz* (1972), 43 Mich. App. 465, 204 N.W.2d 281.

The People urge that an arson investigation pursuant to section 6 of the Fire Investigation and Prevention Act (Ill. Rev. Stat. 1971, ch. 127½, par. 6), is not a search but rather an inquiry into the cause and source of a conflagration, and that the public safety and interest is the underlying rationale for the aforesaid administrative action thus taking precedence over an individual's right of privacy. The People attempt to distinguish

the cases cited by the defendant from the case at bar and we find the People's argument to be persuasive.

We agree with the People's contention that the *Camara* and *See* cases are distinguishable from the case at bar.

In *Camara*, defendant was arrested for refusing to permit building inspectors to inspect his apartment without a warrant. The building inspectors were attempting to determine if defendant was violating the city's Housing Code. Their decision to inspect defendant's apartment was based on information given them by defendant's building manager. Defendant refused to permit the inspectors to enter his apartment and was ultimately cited for violating a provision of the City's Housing Code which permits building inspectors to search for Code violations without a warrant. The State courts ruled that the warrantless intrusion was permissible. Defendant ultimately appealed to the United States Supreme Court and that court reversed, holding that an administrative search is a serious intrusion upon fourth amendment rights and that "such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual * * *." (387 U.S. 523, 534, 18 L. Ed. 2d 930, 938.) The court, however, specifically limited its holding when it stated:

"Since our holding emphasizes the controlling standard of reasonableness, nothing we say today is intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations. [Citations.]" 387 U.S. 523, 539, 18 L. Ed. 2d 930, 941.

In *See*, the Supreme Court applied the *Camara* principle to commercial structures as well as private dwellings.

The *Camara* and *See* cases were reviewed in *United States v. Green* (5th Cir. 1973), 474 F.2d 1385, a case very similar to the case at bar. In *Green*, the defendant's apartment caught fire after which an arson investigator entered to determine the fire's cause. At that time, defendant's identity was unknown and the authorities entered the premises without his permission. After searching the entire apartment to determine if the fire might reoccur, the investigator returned to the kitchen to examine a box in which he thought the fire might have started. In the course of his examination, he found several metal plates which were later determined to be counterfeit $20 Federal Reserve Note plates. The arson investigator then called a representative of the Secret Service who subsequently seized the plates for use in the defendant's prosecution for possession of counterfeit plates with the intent to counterfeit Federal Reserve obligations. The defendant moved to suppress the evidence on the grounds that the evidence was seized without a warrant. The defendant in *Green*, as does the defendant herein, relied upon the cases of

*Camara* and *See.* The *Green* court, however, rejected the defendant's position and noted that the Supreme Court's warrant requirement applied to those inspections which are routine and general, being intended to insure compliance with a safety code. The court noted that the *Camara* principle applied "in situations where no compelling reason exists necessitating the prompt inspection of a particular premises at a particular time." 474 F.2d 1385, 1388.

The *Green* court cited the Florida statute from which the arson inspector derived his authority to act. The statute stated:

"The State Fire Marshall shall investigate the cause, origin, and circumstances of every fire occurring in this State wherein property has been damaged or destroyed where there is probable cause to believe that the fire was a result of carelessness or design. Report of all investigations shall be made on approved forms to be furnished by the Fire Marshall." (Fla. Stat. Ann. §633.03.)

We note that the Illinois law, which the authorities in this case were acting upon, is somewhat similar to the Florida statute. The Illinois statute states in pertinent part that:

"The chief of the fire department of every city or village in which a fire department is established, * * * shall investigate the cause, origin and circumstances of every fire occurring in such city, * * * by which property has been destroyed or damaged, and shall especially make investigation as to whether such fire was the result of carelessness or design." The Fire Investigation and Prevention Act, Ill. Rev. Stat. 1971, ch. 127½, par. 6.

The *Green* court held that the action of the arson investigators was not unreasonable nor improper in light of the statute and circumstances surrounding the case. The court observed that the fire investigator had a duty to seize all evidence relevant to his investigation of the fire's cause.

We find that the arson investigators in this case, as in the *Green* case, had a duty to seize all evidence relevant to the investigation of the cause of the fire which occurred on January 13, 1974.

The defendant also relies on *People v. Dajnowicz* (1972), 43 Mich. App. 465, 204 N.W.2d 281. However, the *Dajnowicz* case has been specifically rejected by several other divisions of the Court of Appeals of Michigan. See *People v. Tyler* (1973), 50 Mich. App. 414, 213 N.W.2d 221; *People v. Kulick* (1974), 57 Mich. App. 126, 225 N.W.2d 709; *People v. Bailey* (1972), 42 Mich. App. 359, 202 N.W.2d 557, and *Bailey v. Michigan* (6th Cir. 1974), 493 F.2d 1218.

In *Kulick,* a fire occurred at a Detroit furniture store early one Sunday morning. After the fire was extinguished, two members of the arson squad began to search the premises to investigate the fire's cause. The investigators determined that the fire was not of an accidental origin. The

owner was present when the search of the premises was being conducted and he made no objection to the investigation. The investigation was continued the next day in the owner's presence by a Lt. McClary of the arson squad. During his investigation, McClary took photographs and seized samples of debris which led to the eventual filing of arson charges against the defendant. Defendant unsuccessfully moved to suppress the evidence gathered by McClary on the grounds that it had been seized without a warrant. On appeal, the court defined the issue as whether a search warrant is a prerequisite to an investigation to determine whether a fire had an incendiary origin when suspicion of such facts is raised while a fire is being fought or during a search for undetected embers. The court held that no warrant was required.

The *Kulick* court specifically refused to follow the mandate of *Dajnowicz* and adopted the rationale of *Tyler*. The court stated:

> "*Dajnowicz* determined such consent was required before investigation without a warrant. To the contrary, it was held in *Tyler* that because of the nature of the investigation being conducted it might validly proceed without either consent or warrant. The *Tyler* court in criticism of the language used in *Dajnowicz*, said * * *:
>
>> 'The fallacy in the language quoted is that the investigation of a fire to determine if arson has been committed does not place a person under criminal investigation. It places the cause of the fire under investigation.' " (57 Mich. App. 126, 130, 225 N.W.2d 709, 711.)

The *Kulick* court also stated that:

> "* * * we are unable to perceive that this investigation resulted in an invasion of the defendant's privacy or security. We hold that the investigation was lawfully commenced on February 28th, and that the events of March 1st were only a continuation of a search valid in its inception. That being so, we do not reach nor [*sic*] decide the question of whether consent was actually given by the defendant.
>
> Had the defendant made protest [*sic*], it might well have been the better part of judgment had the search been delayed until a warrant was obtained, but lacking protest, we believe that the course pursued by the officers was a practical manner of inquiry as to the cause of the fire." 57 Mich. App. 126, 132-33, 225 N.W.2d 709, 712-13.

We find the *Kulick* court's reasoning persuasive. We have, in the instant case, a volunteer fire chief inspecting premises immediately after a fire in order to find still burning, though undetected embers and to ascertain the

origin of the fire. The fire chief acted pursuant to State law. During the course of his investigation his suspicions were aroused and he advised the appropriate authorities of the situation as he perceived it. The next day, he continued his investigation with the aid of an expert arson investigator. Either one or both of the defendants were present during most of the investigation. This investigation, like the investigation in *Kulick*, was focused upon the nature and origin of the fire and not on the question of who may have set the fire.

■■ The actions of the investigators in this case were reasonable and were of the nature and type sanctioned by the *Camara* court. There is a difference between a search intended to lead to the filing of charges against an individual who is the focus of the investigation and an investigation seeking the cause of a fire. Public safety and welfare requiries that fires be investigated in order to see that they are thoroughly extinguished and to determine their causes. Accordingly, we find that the trial court did not err when it refused to grant defendant's motion to suppress.

Next, defendant urges that he was not proved guilty beyond a reasonable doubt insofar as his guilty verdict was based upon the same evidence on which his co-defendant was acquitted. He submits that the jury rendered an inconsistent and compromised verdict and in so doing denied him a fair trial. We cannot agree.

■■ The general rule regarding inconsistent verdicts is that when there is the slightest difference in evidence relating to two persons who are tried together, the trier of fact may weigh the evidence and make allowances for such differences and the acquittal of one co-defendant is not grounds for reversal of a conviction of the other. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19; *People v. Taylor* (1974), 25 Ill. App. 3d 396, 323 N.E.2d 388.) Defendant contends that the evidence implicating him and his wife is identical, and thus a guilty verdict for one and not the other defendant should nullify the guilty verdict.

■■ Defendant testified that he woke up in the early morning hours and found the house abnormally cold. He stated that he found that the furnace was not working and that some of the lights in the kitchen and utility area were not functioning. After awakening his children and removing them to a friend's home, he returned with his wife to see if he could start the furnace by replacing fuses. His wife waited in the dining room while he went to the basement. Defendant's wife testified that she remained in the dining room and that she did not accompany her husband to the basement. She also testified that she had been in a fire on a previous occasion and that she had a great fear of fire. She stated that when she heard a "tsst" noise and saw smoke she ran out of the house away from her husband and proceeded to the neighbors and refused to go back into the home until the fire had been extinguished. We have reviewed the record

of the trial and have found that there were differences in the evidence as it applied to each of the defendants. These differences created serious questions of fact for the jury to resolve. These evidentiary variances were sufficient to permit the jurors to render their differing verdicts. Accordingly, we find that the verdicts in question were not inconsistent nor can we say that the verdicts were so improbable or unsatisfactory as to leave a reasonable doubt of guilt.

Judgment affirmed.

CRAVEN, P. J., and GREEN, J., concur.