THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FRED HOLLOWAY *et al.*, Defendants-Appellees.

Fourth District   No. 15704

Opinion filed March 25, 1980.

TRAPP, J., dissenting.

Kenneth R. Boyle, State's Attorney, of Carlinville (Thomas R. Lamont and Keith P. Vanden Dooren, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendants were charged by indictment with three counts each of arson in violation of section 20—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 20—1); Moore was also charged by indictment with one count of criminal damage to property in violation of section 21—1 of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 21—1). In addition each of the defendants was charged by information with three counts of conspiracy to commit arson in violation of section 8—2 of the Code (Ill. Rev. Stat. 1977, ch. 38, par. 8—2). Holloway filed a written motion to suppress evidence illegally seized pursuant to section 114—12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12). Moore orally joined in the motion. A hearing was held in the circuit court

of Macoupin County on the motion, and it was allowed by the trial court. A motion to reconsider was denied, and the State has appealed pursuant to Supreme Court Rule 604(a)(73 Ill. 2d R. 604(a)). We affirm.

There is no substantial dispute over the facts except in one or two details of no great significance, and the parties agree that our decision will be governed by the recent case of *Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942.

The issues presented are two: (1) whether a fire investigator's search of the burned premises without a warrant violated the defendants' fourth amendment rights prohibiting unreasonable searches and seizures; and (2) whether defendant Moore has standing to contest the search.

The factual background of the case is this: Holloway and his wife owned in joint tenancy a house in Virden, Illinois. On February 2, 1977, at about 2 a.m., a member of the Virden Police Department, and also a member of the Virden Volunteer Fire Department, received a call that there was a fire on the premises. He notified the police dispatcher who in turn notified the fire department. The officer then repaired to the scene, and went next door to a new apartment complex, in order to alert any occupants concerning the danger from the fire. He found Moore lying on the floor of the first apartment in a bedroom with a television set on. He pounded on the window to waken Moore.

The fire chief of Virden testified at the suppression hearing, and stated that this was a major fire requiring the services of 40 to 45 firemen, four pumpers and a rescue van from Virden, and one pumper and one tanker truck from Girard. The call was received at about 2:40 a.m. on February 2, 1977, and the fire extinguished at 7 a.m. when the firemen and the equipment left the scene.

At about 7:30 a.m. on the same morning, the fire chief called on the telephone to a fire investigator of the State Fire Marshall's office. This investigator lived in Benld, about 30 miles from Virden. The fire chief requested an investigation because the fire appeared "suspicious," a gasoline can having been found near the building lying in the snow.

The investigator arrived in Virden about 9:30 a.m. on the same morning, and first went to the police station to talk to the officer who made the report of the fire. He then went to the scene, arriving about 9:45 a.m., and recalled seeing some firemen and one truck there. There was testimony to indicate that the fire had rekindled at about 9:30 a.m. and again about noontime.

The investigator entered the premises during his 9:45 a.m. visit but was unable to take any pictures because of smoke and steam. He did enter during the noontime rekindling, and caused pictures to be taken at that time, and finally left the premises at about 4:30 p.m. on February 2, 1977.

The investigator returned the following day, February 3, 1977, and talked with defendant Holloway at the scene. Holloway showed the investigator where a fire had occurred in the apartment complex next door on February 1, 1977. He also stated that certain flammables had been stored on the burned premises. The investigator felt that the places of storage were compatible with the type of fire pattern which he had observed, and that he did not have an arson case. Therefore he ceased the investigation.

He reopened the investigation in the autumn of 1978, about a year and one-half later, upon the request of the State's Attorney, to whom a witness had come forth and testified as to defendants' involvement.

As indicated above, the trial court allowed the motion to suppress and in ruling on the motion to reconsider said:

"It's also the court's understanding from the testimony that Mr. Scott was not a fireman who was fighting this fire but an investigator who went upon the scene after the firemen had retreated or left the fire scene. It's my understanding from this United States Supreme Court decision (*Michigan v. Tyler*) that he or any other person must go through the warrant procedures before he has any right to go upon the premises and violate the privacy of this citizen or any citizen."

The parties differ in their interpretation of *Tyler* as applied to the facts in the instant case. The State maintains that the fire was still in progress and therefore the investigator went lawfully upon the premises without a warrant. Defendants, on the other hand, stand on the trial court's finding that the fire was over with and a warrant was required.

A brief recapitulation of the facts in *Tyler* is in order since the court's decision turned largely on them. The fire occurred shortly before midnight on January 21, 1970; the fire chief made an inspection about 2 a.m. on January 22, approximately two hours later; by 4 a.m. the firemen had departed and the chief made another entry; at 8 a.m. the chief returned and made another entry; and about 9 a.m. the chief made a further entry. Items of evidence were removed and pictures taken during several of these entries. On February 16 a member of the State arson squad entered the premises without a warrant and obtained additional evidence. This entry was followed by several more warrantless entries.

The court held that no warrant is necessary to authorize an entry for the purpose of fighting a fire and for a reasonable time thereafter; that firemen may seize evidence of arson which is in plain view during such entries; on the facts of the case the morning entries of January 22 were continuations of the first entry; that the entries of February 16, and thereafter, were not a continuation since they were clearly detached from

the original emergency and were made by arson investigators, not firemen. A warrant was required.

The question presented in the instant case becomes whether the events occurring at 9:30 a.m. on February 2, 1977, and again at noon were "continuations" of the original investigation within the meaning of *Tyler*. If they were, no warrant was required and the trial court was incorrect. If they were "detached" within the meaning of *Tyler*, a warrant was required and the trial court was correct.

■■ The standard for appellate review of a motion to suppress is whether the finding of the trial court was manifestly erroneous. (*People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed. 2d 302, 95 S. Ct. 506.) On the facts of this case we find it was not.

Even a cursory examination of the facts in *Tyler* demonstrates that the further entries on January 22 were made by the fire chief and his assistants who had made the original entry. The court said:

> "As the fire was being extinguished, Chief See and his assistants began their investigation, but visibility was severely hindered by darkness, steam, and smoke. Thus they departed at 4 a.m. and returned shortly after daylight to continue their investigation. Little purpose would have been served by their remaining in the building, except to remove any doubt about the legality of the warrantless search and seizure later that same morning. Under these circumstances, we find that the morning entries were no more than an actual continuation of the first, and the lack of a warrant thus did not invalidate the resulting seizure of evidence." *Tyler*, 436 U.S. 499, 511, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1951.

Although it is not specifically articulated in the preceding quotation from *Tyler*, we believe that there is a clear emphasis by implication on the fact that the entries there described were made by the same people; *e.g.*, "*they* departed * * * to continue *their* investigation," "*their* remaining." (Emphasis added.) The end result by the court was to sanction warrantless entries made by the same personnel who had commenced investigations at, or about, the time of the original emergency and further warrantless entries for a reasonable time thereafter in order to conclude the same matters. The court condemned further entries by other personnel in order to make investigations which were "detached from the initial exigency." *Tyler*, 436 U.S. 499, 511, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1951.

■■ We therefore believe the true rule to be that entries may be made without a warrant by officials on the scene at the time of the initial emergency and for a reasonable time thereafter in order to conclude the

original investigation. The reasonableness will depend on factors present in each case, such as darkness, smoke, steam, and other impediments to proper investigation. When the investigation is turned over to other officials after the initial emergency has passed, a warrant is required.

■■ As applied to the facts of the case at bar, these requirements were not met. The entries at 9:45 a.m. and at noon were not by the fire chief who had supervised the extinguishing of the fire; they were made by an investigator who was not subject to the control or supervision of the chief. The entries were made some three hours, and five hours, after the fire had originally been declared extinguished. The argument that it was the same fire, or a rekindling thereof, is irrelevant. The emphasis of *Tyler* is not on a single fire, but on the same investigations begun and continued by the same people.

Our attention has been called to our prior decision in *People v. Patrick* (1976), 41 Ill. App. 3d 1037, 355 N.E.2d 224. That decision relied in part on a decision of the Michigan Court of Appeals which was prior to the decisions of the Michigan Supreme Court and the United States Supreme Court in the same case. Hence *Patrick* is no longer persuasive.

■■ In its brief, the State has questioned whether defendant Moore has standing to raise the issue of suppression since his motion was not in writing as required by section 114—12(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—12(b)). This question was not raised in the trial court and therefore the State has waived it. *People v. Edwards* (1974), 21 Ill. App. 3d 354, 315 N.E.2d 91 (abstract).

The decision of the circuit court of Macoupin County was correct, and it is affirmed.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:

The duties of the local "fire chief" are stated in section 6 of "An Act relating to the State Fire Marshall" (Ill. Rev. Stat. 1977, ch. 127½, par. 6):

> "The chief of the fire department of every city or village in which a fire department is established * * * shall investigate the cause, origin and circumstances of every fire occurring in such city, village * * * by which property has been destroyed or damaged, and shall especially make investigation as to whether such fire was the result of carelessness or design. Such investigation shall be begun within two days, not including Sunday, of the occurrence of such fire, and the Office of the State Fire Marshall shall have the right to supervise and direct such investigation whenever it deems it expedient or necessary."

Illinois has adopted a legislative policy "that every fire, by which property has been destroyed or damaged, be investigated as to its cause, origin and circumstances." *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 150, 379 N.E.2d 281, 285.

The majority opinion rejects the conclusion of the trial court that the authority of the fire chief to examine and investigate the fire ceased when the hoses were rolled up. It appears to agree that the opinion in *Tyler* would permit the fire chief to return following his 7 a.m. departure and perform his investigatory duties as an "actual continuation of the first" examination and says that:

> "The end result by the court was to sanction warrantless entries made by the same personnel who had commenced investigations at, or about, the time of the original emergency and further warrantless entries for a reasonable time thereafter in order to conclude the same matters. The court condemned further entries by other personnel in order to make investigations which were 'detached from the initial exigency.' "

*Tyler* does not, in fact, condemn "further entries by other personnel" within the time span which the supreme court found to be reasonable. There, the fire began before midnight. See, the fire chief concerned, arrived at 2 a.m. when the crew was watering down a "few smoldering embers." A police detective was called, and he arrived at 3:30 a.m. It can hardly be fairly said that See "had supervised the exigency of the fire," and while one may assume, albeit, that the detective and See were compatible, it is not apparent that the police detective was "an investigator * * * who was subject to the control or supervision of the chief."

Some four hours after leaving the scene of the fire, Chief See briefly returned with an assistant, Somerville, whose duty was to determine the origin of all fires. Nothing in *Tyler* suggests that Somerville had any prior association with the extinction of the fire or the investigation commenced by See in the early morning. An hour later Somerville returned with the police detective and the evidence was procured in due course through their joint efforts. The sequence of investigation described in *Tyler* does not actually support the conclusion concerning the same personnel and original emergency as stated in the language of the majority opinion.

The majority opinion appears to agree that the Virden chief could have returned at 9:30 a.m. and at noon as "an actual continuation of the first" investigation (436 U.S. 499, 511, 56 L. Ed. 2d 486, 499, 98 S. Ct. 1942, 1951). Despite the fact that *Tyler* implicitly approves the delegation of investigative duties by Chief See and Somerville and Webb, this court holds that the Virden fire chief of a volunteer fire department cannot delegate the completion of the same "investigation" to Scott who is

authorized by the cited statute to act in behalf of the State Fire Marshall, and who presumably has greater professional skill and training. By statute the State Fire Marshall is expressly authorized to supervise and direct the investigation required to be made by the chief of the Virden fire department.

*Tyler* applies the standard of reasonableness of time for purposes of the official investigation, for it expressly rejected the determination of the Michigan Supreme Court and adopted by the trial judge that once the fire had been extinguished and the firemen had left, no one, including the chief, could return to investigate absent a warrant or consent. (436 U.S. 499, 503-09, 56 L. Ed. 2d 486, 494-98, 98 S. Ct. 1942, 1951.) On the contrary, *Tyler* determined that the firemen may remain a reasonable time or have "an actual continuation" of a reasonable time to seek the origin of the fire. A reasonably rational method of investigation should accompany a reasonable time for investigation.

It is not a correct application of *Tyler* to hold that upon comparable and substantially identical facts the Virden fire chief could not delegate his investigative duties to Scott, and I would reverse the order of the trial court.