THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEO MITCHELL *et al.*, Defendants-Appellants.

Second District   No. 76-308

Opinion filed May 25, 1978.

Julius Lucius Echeles, of Chicago, for appellants.

Peter J. Woods, State's Attorney, of Oregon (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendants-appellants, Leo Mitchell, Anna Mitchell, Jimmy Mitchell, Steven Mitchell and Louis Mitchell, hereinafter the defendants, were charged by informations filed in Ogle County with armed robbery. During a bench trial, prior to a submission of the case to the court, the charges against the defendants, Leo, Anna and Louis Mitchell, were reduced to robbery pursuant to the State's motion. Thereafter, Leo, Anna and Louis Mitchell were found guilty of robbery, while Jimmy and Steven Mitchell were found guilty of armed robbery. On the robbery convictions, Anna Mitchell was sentenced to one year's probation; Leo and Louis Mitchell were sentenced to two years' probation plus 30 days' incarceration. On the armed robbery convictions, Jimmy and Steven Mitchell each received sentences of four years to four years and six months.

On appeal the defendants raise four issues: (1) Whether the trial court erred in denying the State's motion to reduce the convictions of Jimmy and Steven Mitchell from armed robbery to robbery; (2) Whether the trial court committed prejudicial error in limiting the cross-examination of the complainant, Lee Evans; (3) Whether the defendants were proved guilty beyond a reasonable doubt; and (4) Whether the trial court erred in denying the defense's motion for a new trial based on newly discovered evidence. After a review of the record and briefs, we find the defendants' contentions to be without merit, and we affirm the defendants' convictions.

It would unduly prolong this opinion to set forth a complete recitation of the unique facts and the surrounding familial background data of this case. Accordingly, to the extent possible, only relevant matter necessary to our disposition will be elucidated herein.

The complaining witness, Lee Evans, a Gypsy, testified for the State that during the late hours of November 22, 1975, he and his wife, Christine, were enroute from Chicago to Davenport, Iowa, on Route 5 (hereinafter the Tollway). As the complainant and his wife were proceeding westerly, they were forced over by a car with a red light and robbed at gunpoint of $1,500 and a diamond ring. In addition, the contents of the car were strewn about the highway and one of the tires of complainant's car was shot out. The complainant identified: Jimmy Mitchell—as the person who pointed a rifle at his head and told him, "Don't move or I'll kill ya," and then shot out the tire; Steven Mitchell—as the other person who had a rifle that evening; and Leo, Anna, and Louis Mitchell—as all being present at the scene of this crime with Steven and Jimmy Mitchell. Following this occurrence, the complainant was taken to Rochelle by a passerby. The complainant, at that time, informed the police of the robbery. However, he did not tell the officers he knew the identities of the perpetrators until approximately seven hours later. On cross-examination the complainant stated that he was a Greek Gypsy, self-employed as a car salesman, and that he had known the defendants for about eight years and had been at various events and places with the Mitchells hundreds of times. He also acknowledged that the Evans and Mitchell families had an interfamily altercation at a wedding in November of 1975, allegedly due to the fact that the complainant had had sexual intercourse with the wife of one of the defendants.

Christine Evans, a Greek Gypsy and the complainant's wife, testified for the State that she did not have an opportunity to observe the robbers because she had fainted when she heard the shot. She stated that she was distantly related to the Mitchell family.

Sergeant Donald Job of the Illinois State Police testified for the State to the effect that a search of the Mitchell family residence in River Grove,

Illinois, on November 26, 1975, had not produced either the proceeds of this robbery or any weapons.

Steve Evans, a brother of the complainant, testified for the State that he had received a telephone call in late November from Jimmy Mitchell, one of the defendants, in which Jimmy Mitchell stated he would kill the complainant if he came to court and that he would also kill Steve, himself. Steve Evans further stated that Jimmy Mitchell told him that he could have killed the complainant and his wife on the night in question but that he did not want to.

The defendants presented an alibi defense at trial. The defendants and other family members all testified that the defendants had been at the police station from 10 o'clock in the morning until approximately 8:30 in the evening of November 22, 1975, on an unrelated altercation with the Evans family which had occurred at a wedding earlier in November of 1975. The defendants and their friends had all returned to Anna Mitchell's residence at about 9 p.m. on November 22, where they all had remained until somewhere around 1:30 a.m. on November 23, 1975. The defense also presented various testimony concerning the disaffection which existed between the defendants' and complainant's Gypsy families.

The defense first contends that the trial court erroneously denied the State's motion to reduce the convictions of Jimmy and Steven Mitchell from armed robbery to robbery. The defense's contention is two-fold: First, that the convictions of Jimmy and Steven Mitchell for armed robbery are inconsistent both legally and factually in light of the other three defendants' convictions for only robbery; and second, that the State's request was in essence a motion to nolle prosse these charges after trial, which is within the State's power.

■ ■ The principles in regard to inconsistency in verdicts are well settled. Generally, where there is a minimal difference in evidence relating to two persons who are tried together, the trier of fact may properly weigh the evidence and make the requisite allowance for such differences, and the acquittal of one is not grounds for reversal of conviction of the other. (*People v. Patrick* (1976), 41 Ill. App. 3d 1037, 355 N.E.2d 224.) Similarly, it is only where the evidence in regard to each defendant is identical that the conviction of one and acquittal of the other can be said to be so inconsistent as to require reversal of a conviction on review. *People v. Hardemon* (1977), 46 Ill. App. 3d 1052, 361 N.E.2d 680.

■ ■ We think it is obvious that the evidence as to Jimmy and Steven Mitchell was not identical to that of the other three defendants. Jimmy Mitchell was identified by the complainant as having pointed a rifle at his head, threatened to kill the complainant, and then shot out a tire. Likewise, the complainant positively identified Steven Mitchell as the other person of the quintet who had a rifle during the robbery. On the contrary, the role of the other three defendants was passive and different

from that of the other armed robbers. Under these circumstances, where the evidence was not identical in all respects as to all the defendants, the trial court was not barred from finding Jimmy and Steven Mitchell guilty of armed robbery where the evidence supported such a determination beyond a reasonable doubt. *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19.

Secondly, the defendants contend that the State's post-trial motion was essentially a *nolle prosequi* motion as to the charges against Jimmy and Steven Mitchell. Prior to a discussion of the legal principles involved with this issue, it would be instructive to set forth the motion as it was presented by the State:

> "MR. WOODS: Your Honor, it would be the motion of the State at this time on the cases of Leo [*sic*] and Jimmy who were convicted of armed robbery. It would be the *motion of the State* at this time *that the charge be amended or reduced to robbery.*
>
> THE COURT: What is the basis of your motion? They stand convicted after a trial which was contested and the State presented evidence vigorously on an armed robbery, the court convicted them on the basis of that evidence. What is the basis for request of reduction after conviction?
>
> MR. WOODS: Your Honor, I did prosecute it because I thought that it did happen. I think there are extenuating circumstances considering the relationship of the two parties. *I think in the interest of justice that the State would be better served by reducing it to robbery. I believe that a robbery did occur and I believe that would be the more proper sentence on the charge.* I have nothing further, Your Honor.
>
> THE COURT: Do you believe that the evidence and the findings of the court were in error at the time of the trial?
>
> MR. WOODS: No, Your Honor." (Emphasis supplied.)

The scope and purpose of a *nolle prosequi* was ably stated in *People v. Watson* (1946), 394 Ill. 177, 179, 68 N.E.2d 265, 266, *cert. denied* (1946), 329 U.S. 769, 91 L. Ed. 662, 67 S. Ct. 130, wherein the court stated:

> " 'A *nolle prosequi* is not a final disposition of the case, and will not bar another prosecution for the same offense. It is not an acquittal, but it is like a nonsuit or discontinuance in a civil suit, and leaves the matter in the same condition in which it was before the commencement of the prosecution.' [Citation.] Again, it has been said that the ordinary effect of a *nolle prosequi* is to terminate the charge to which it is entered and to permit the defendant to go wherever he pleases, without entering into a recognizance to appear at any other time."

The State's motion in the present case, if granted by the trial court, would have resulted in final dispositional orders of acquittal as to Jimmy and

Steven Mitchell on the armed robbery charges. It also would have barred other prosecutions for armed robbery and would have resulted in the defendants' being convicted for "straight" robbery. We believe to characterize such a motion by the State as a *nolle prosequi* would be ludicrous and contrary to the well-accepted concept of a *nolle prosequi* set forth above. The State's verbal motion, in our opinion, is more analogous to a motion to vacate judgment of guilt on the armed robbery and enter judgment on the lesser included charge of robbery. The State did not believe that the evidence and findings of the court on the armed robbery were in error at the time of trial, but nonetheless, it was of the opinion that a sentence on a robbery conviction would be more proper for Jimmy and Steven Mitchell. Under these circumstances, the trial court properly denied the State's motion to reduce these charges. Further, we believe the trial court thoroughly considered the State's position as to the armed robbery offenses in its imposition of relatively light sentences imposed on Jimmy and Steven Mitchell. Accordingly, the trial court did not err in denying the State's post-trial motion.

The defendants next argue that the trial court erred in limiting the cross-examination of the State's key witness, Lee Evans, to only events that occurred before the Tollway incident. The defense contends that the trial court should have permitted cross-examination of Lee Evans concerning those incidents which allegedly ensued after the occurrence in order to demonstrate the witness' bias toward the defendants. The State in rebuttal asserts that the defense has not properly preserved this contention on review because its motion for a new trial did not include this alleged error. Alternatively, the State maintains that the trial court's ruling was not an abuse of sound judicial discretion.

■■■ Initially we note our agreement with the State that the defendants have waived this contention because this alleged error was not raised in their post-trial motion for a new trial. (*People v. Limas* (1977), 45 Ill. App. 3d 643, 359 N.E.2d 1194.) However, even assuming arguendo that this issue was properly preserved, defendants' position still lacks merit. Our supreme court recently noted in *People v. Williams* (1977), 66 Ill.2d 478, 363 N.E.2d 801, quoting from *People v. Burris* (1971), 49 Ill. 2d 98, 104, 273 N.E.2d 605, 610:

> " 'The extent of cross-examination with respect to an appropriate subject of inquiry rests in the sound discretion of the trial court. It is only in the case of a clear abuse of such discretion resulting in manifest prejudice to the defendant that a court of review will interfere.' " (*66 Ill. 2d 478, 487, 363 N.E.2d 801, 805.*)

Herein, it is apparent that further cross-examination of Lee Evans concerning post-crime incidents would not have added one scintilla of evidence regarding the bias of this witness. It is obvious from our reading

of this record that these parties harbored a great deal of hostility and bad blood toward each other which antedated this criminal activity on the Tollway. In fact, the defendants' family and Lee Evans' family had had an altercation at a wedding only six days before this incident. Under these circumstances, we believe the trial court was aware of Lee Evans' possible bias toward the defendants, that further testimony to this effect would have been cumulative, and that the trial court did not abuse its sound judicial discretion by limiting the cross-examination of this witness to events preceding the Tollway occurrence.

Thirdly, the defendants contend that the evidence was insufficient to prove their guilt beyond a reasonable doubt. Basically, defendants attack the credibility of the State's main witness, Lee Evans, whose testimony they feel was substantially discredited at trial by numerous witnesses, including the defendants. In addition, the defendants point to the statement of Elmer Fox, a Chicago police officer, who testified that it was common practice for Gypsies to file frivolous criminal charges against each other.

■■ It is well settled that the testimony of a single identification witness, if positive and credible, is sufficient to uphold a conviction on appeal, even if such testimony is contradicted by the accused, provided the witness viewed the accused under conditions which would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313; *People v. White* (1978), 56 Ill. App. 3d 757, 372 N.E.2d 691.) Generally, in a bench trial, the trial judge as the trier of fact is in the superior position to determine the credibility and weight to be given the witnesses' testimony, and a court of review will not substitute its judgment unless the evidence is so unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Boykin* (1977), 54 Ill. App. 3d 220, 369 N.E.2d 219.

In the instant case, we are not convinced that Lee Evans' testimony was so incredible as to cast doubt upon the trial court's judgment. Certainly, Lee Evans' lifestyle, as well as that of the defendants, is not atypical in today's society. However, Evans' testimony throughout the trial was consistent and credible in his accusation of the defendants as the perpetrators of the events on the Illinois Tollway. Further, we do not believe that Officer Fox's sweeping generalizations as to the idiosyncrasies and practices of Gypsies were entitled to great weight by the trial court. Likewise, the defendants' alibis and supportive witnesses were not so persuasive as to impel us to reverse the trial court's judgment. The trial court viewed these witnesses, their testimony, as well as their candid animosities toward one another, throughout the course of this trial and determined that the credibility and weight of this testimony was in favor of the State and against these defendants. Our review of the record

substantiates such a conclusion. Accordingly, we find that the defendants were proved guilty beyond a reasonable doubt.

The defendants' final contention is that the trial court abused its discretion when it denied their motion for a new trial. Defendants' post-trial motion was grounded on newly discovered evidence which consisted of a witness, Mrs. Veronica Gabrielle, who said she saw Leo Mitchell at a tavern, called Sunday's Tavern, in Chicago at the time of the alleged robbery. Defendants contend that they exercised due diligence in attempting to locate Mrs. Gabrielle but that they had been unable to locate her during subsequent trips back to the bar until after the trial. Defendants argue that this newly discovered evidence, which was corroborative of defendant Leo Mitchell's claimed activities on this night, would have changed the result of all the defendants on retrial. We disagree.

■■ The well-settled criteria used by Illinois courts in their evaluations of requests for new trials based on newly discovered evidence are as follows: the evidence must be of such a character that it will probably change the verdict on re-trial; the evidence is pertinent to an issue raised at trial and is not merely cumulative; the evidence was discovered following the trial and be of such a nature that it could not have been discovered before trial by the exercise of due diligence. (*People v. Baker* (1959), 16 Ill. 2d 364, 158 N.E.2d 1; *People v. Whittaker* (1978), 56 Ill. App. 3d 430, 373 N.E.2d 30.) In addition, the defendant has the burden to rebut the presumption that the verdict was proper, and the trial court's denial of a new trial based on the above grounds will be overturned on appeal only if there has been a manifest abuse of discretion. *People v. Holtzman* (1953), 1 Ill. 2d 562, 116 N.E.2d 338; *People v. Wolf* (1977), 48 Ill. App. 3d 736, 363 N.E.2d 402.

■■ In the application of these standards, our review of the record discloses that the asserted newly discovered evidence would not have changed the trial court's judgment in this cause. The defendants had already presented numerous alibi witnesses who had testified concerning their whereabouts on the night in question. Under the circumstances here, we believe that this testimony was merely cumulative to these other alibi witnesses and would not have likely altered the result on retrial. Therefore, we hold that the trial court did not abuse its discretion in denying the defendants' motion for a new trial based on this evidence.

For the above recited reasons the judgments of the circuit court of Ogle County are affirmed.

Judgments affirmed.

NASH and WOODWARD, JJ., concur.