THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PETER J. LIPA, Defendant-Appellant.

First District (4th Division)   No. 81—361

Opinion filed September 30, 1982.—Rehearing denied October 18, 1982.

Leo T. McGonigal and Charles Locker, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Randall E. Roberts, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Peter J. Lipa, along with four other men, was charged with armed robbery of an Illinois tollway truck. Defendant pleaded not guilty and, pursuant to a motion, his case was severed from the others. Following a bench trial, defendant was convicted of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) and sentenced to the Illinois State Penitentiary for not less than 7 years nor more than 14 years. He appeals from that conviction.

Defendant raises the following issues on review: (1) whether the

trial judge erred in failing to recuse himself under Illinois Supreme Court Rule 67(c); (2) whether there was sufficient evidence to prove defendant guilty of armed robbery; and (3) whether defendant's sentence of 7 to 14 years was excessive.

We affirm.

The four other men involved in the crime were Richard Jeskewitz, Richard Fitzgerald, Ozeal Lee and Jonathan Lipa, defendant's brother (since deceased). Fitzgerald, Jeskewitz and Lee pleaded guilty to the lesser charge of robbery. Fitzgerald and Jeskewitz testified on behalf of the State; Lee did not testify at defendant's trial.

The following testimony was adduced at trial. At about 1 p.m. on April 22, 1977, an Illinois Tollway Authority truck was traveling west on the Tri-State tollway near the Lee Street exit. The driver of the truck, Darko Kucan, testified that he saw a light-colored car with flashing headlights in his rear view mirror. He thought the car to be an unmarked police car so he pulled over and stopped. The car stopped about 25 feet behind his truck. Kucan got out of the truck, leaving the keys in the ignition and the engine running, and walked back to the car. There were two men in the car; the driver was black and the passenger was white. The driver motioned Kucan to go the passenger's side. He went to the passenger's side of the car and got into the back seat. Kucan asked, "What's the matter?" He then reached into his back pocket for his wallet and when he looked up there was a shotgun pointed at him. Kucan was then pushed down on the floor, covered with a blanket and told to stay down. The men drove off with him. A ski mask was pulled over Kucan's head and his hands were tied behind his back before he was removed from the car. He was subsequently put into the back of the tollway truck where he was discovered by the Chicago police the following morning. Kucan was questioned by the Chicago police and the Illinois State police at two or more locations for several hours after he was discovered. He gave several statements to the police.

Kucan testified that when initially questioned by Chicago police, he did not tell them that the men in the car had had a shotgun. He claims to have been afraid to tell the police about the gun initially but that it was the only detail omitted from his initial statements to police.

Richard Fitzgerald testified for the prosecution that several months prior to the robbery he and defendant discussed how easy it would be to rob the tollway truck. Fitzgerald and defendant observed the tollway truck picking up receipts on several occasions. Subsequently, defendant located a car that resembled an unmarked State police car. Another accomplice, Richard Jeskewitz, stole the car and modified it. Flashing lights, a spotlight and a public address system were

installed. Jeskewitz also rented a truck and a warehouse to be used in the robbery.

On the day of the robbery, Ozeal Lee drove the phony police car with defendant as a passenger. Fitzgerald, Jeskewitz and Jonathan Lipa rode in the rented truck. After defendant and Lee pulled over the tollway truck and Kucan got out, Jeskewitz was able to drive the tollway truck to the rented warehouse.

The rented truck was used to transport the cash from the tollway truck to defendant's family's farm in Wisconsin. Prior to defendant's trial, metal cannisters of the type used by the tollway authority to transport money were found in a pond near the Wisconsin farm. The exact amount of money stolen was not ascertained. It appears that Ozeal Lee and Richard Jeskewitz each received $5,000. It is unclear how much the other participants received.

Prior to trial, there was discussion among the trial judge, defendant's attorney and the prosecutor regarding recusal of the trial judge. The trial judge had been an assistant State's Attorney in charge of the felony trial division at the time of defendant's indictment. In his prior capacity as an assistant State's Attorney, the judge had approved a subpoena for telephone records in connection with the grand jury investigation surrounding the robbery for which defendant is charged. The judge did not actively participate in the case in any other way when he was an assistant State's Attorney. The judge stated that he did not remember approving the subpoena. The judge and the prosecutor, as well as defendant and his attorney, agreed that there was no conflict. Following that discussion, the judge decided that he would not recuse himself.

Defendant's first contention is that the trial judge erred by failing to recuse himself. Defendant argues that under the circumstances in this case recusal is mandatory under Illinois Supreme Court Rule 67(c) (73 Ill. 2d R. 67(c)), which provides as follows:

> "A judge shall not participate in any case in which he has previously acted as counsel. He cannot rid himself of this responsibility by consent of counsel or the parties to the case."

Defendant implies that through association with the case in a former supervisory capacity the trial judge may have formed opinions about the case which would necessarily influence his ability to act impartially. Defendant asks us to adopt the rule of several New York cases which held that recusal is mandatory if the trial judge was in any way associated with the case in another capacity. We reject this argument.

We see no reason to adopt New York case law since *People v. Burnett* (1979), 73 Ill. App. 3d 750, 392 N.E.2d 235, is dispositive of the issue under the facts of this case. In *Burnett,* the trial judge in-

formed the parties that he had served in a supervisory capacity as an assistant State's Attorney when a bond forfeiture proceeding involving the defendant was held. The judge stated that he " 'had no knowledge whatsoever of the case and had never seen the case or handled the case or acted as counsel.' " (73 Ill. App. 3d 750, 754.) Similarly, in this case, the trial judge stated that he "had no knowledge of this case whatsoever ***." The judge in this case, as in *Burnett*, made certain routine approvals in his supervisory capacity. Neither in *Burnett* nor in this case is there any evidence that the judge had personal knowledge of nor was he involved in the case. This court said in *Burnett*:

> "[T]he words of Rule 67(c) referring to a judge who 'acted as counsel' should be given their plain meaning, and should apply to a judge who was actually involved in the prosecution or defense of an accused's case." 73 Ill. App. 3d 750, 754.

Furthermore, this court recognized that the trial judge's former supervisory capacity as an assistant State's Attorney does not amount to his having "acted as counsel." 73 Ill. App. 3d 750, 754-55.

█ We think the *Burnett* case is dispositive of the issue raised by defendant here. Therefore, we hold that the trial judge did not err in failing to recuse himself.

Defendant next contends that there was insufficient evidence to prove him guilty of armed robbery beyond a reasonable doubt. Defendant argues that since the victim, Darko Kucan, was the only person to testify that defendant had a gun at the time of the robbery the elements of armed robbery are not proved beyond a reasonable doubt. Defendant stresses the fact that Kucan failed to mention the gun to the police in his first three statements. Therefore, his statement regarding the gun is not credible and, standing alone, cannot support a finding of armed robbery. We disagree.

Kucan told the police that a shotgun was pointed at his face. He made that statement the day after the robbery while he was being questioned. At trial, he again stated that there was a shotgun.

We do not believe that Kucan's failure to mention the shotgun in his first statement to the police is determinative. There was other evidence from which the trial judge could reasonably find that a shotgun had been used. Kucan testified in open court that a shotgun was pointed at him during the robbery. Additionally, Richard Jeskewitz, one of defendant's accomplices, testified that on the morning of the robbery he gave defendant a sawed-off shotgun. In a bench trial, the judge is in a position to decide the credibility of witnesses and the weight to be given their testimony. *People v. Mitchell* (1978), 60 Ill. App. 3d 598, 605, 376 N.E.2d 1036, 1041.

█ If it is reasonable for the trial judge, acting as trier of fact, to

believe the witnesses' testimony, then the reviewing court will not substitute its judgment for that of the trial court. (See *People v. Mitchell* (1978), 60 Ill. App. 3d 598, 605.) We hold that there was sufficient evidence to support a finding of guilty of armed robbery.

Defendant's final contention is that the trial judge's sentence of 7 to 14 years was excessive and unjustified. Defendant argues that since the other accomplices, who pleaded guilty, received lighter sentences, he should have also. He asserts that he was penalized for exercising his right to remain silent. We reject this argument.

The imposition of a sentence is a matter of judicial discretion, and absent an abuse of discretion, the sentence of the trial court will not be altered by a reviewing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) It is an incorrect assumption that a reviewing court can reduce a sentence absent a finding of abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Defendant fails to show how the trial court abused its discretion. Instead, we are asked to reduce defendant's sentence because Illinois Supreme Court Rule 615(b) (73 Ill. 2d R. 615(b)) permits such reduction and because defendant's accomplices received lighter sentences.

The trial court is in a better position than is a reviewing court to determine the appropriate sentence. The trial court has the opportunity to consider many factors such as demeanor and character, while the reviewing court has only the record of the proceedings on which to base its decision. In this case, the record discloses that the trial judge gave careful thought to many factors and, in his words, sought to "make the punishment fit the crime and the individual," within the statutory guidelines.

While there is some disparity between the sentences received by his accomplices and that received by defendant, we cannot say that there was abuse of discretion. It is not our function, as the reviewing court, to substitute our judgment for that of the trial court merely because we would have imposed a different sentence had the function been delegated to us. *People v. Perruquet* (1977), 68 Ill. 2d 149, 156, 368 N.E.2d 882, 885.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and JIGANTI, JJ., concur.