UNITED STATES of America ex rel. Mitchell LINK and Karen Link, Petitioners-Appellants,

v.

Michael LANE, Director of the Illinois Department of Corrections, Respondent-Appellee.

No. 86–1393.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1986.

Decided Feb. 18, 1987.

Ellen R. Domph, Chicago, Ill., for petitioners-appellants.

Jack Donatelli, Office of Ill., Atty. Gen., Chicago, Ill., for respondent-appellee.

Before BAUER, Chief Judge, and CUDAHY and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

Kenneth Glabe was murdered in a remote rural area in Illinois in 1971. Nine years later, a jury convicted Glabe's ex-wife, Karen Glabe Link and her second husband, Mitchell Link, of the murder. The Links were both sentenced to 35–45 years imprisonment. The instant petition for habeas corpus relief raises the following issues: (1) whether the state court erred in admitting the testimony of Haig's former girlfriend, Pelletiere; (2) whether the state court erred in admitting evidence of certain non-verbal reactions of Karen Link, and (3) whether trial and appellate counsel were ineffective. For the reasons

which follow, we affirm the denial of the Links' petition for habeas corpus.

## I.

The linchpin of the state's case against the Links was the testimony of Preston Haig who was hired by Mitchell Link to perform the murder. Haig testified that Mitchell Link was looking for someone to hire to kill his girlfriend's husband. Haig agreed to do the job. Haig and Mitchell Link then planned the murder whereby Karen Glabe (Link) would feign illness while on a deserted road, while Haig would hide at the designated location prepared to knock Karen Glabe unconscious and murder her husband.

Just prior to the murder, Haig told his girlfriend, Jeanine Pelletiere, that he was hired by two lovers to kill the husband of one of the lovers in a remote area. Pelletiere went to the States Attorney's Office with the information. After the murder, Haig realized that Pelletiere had gone to the authorities and he left town. Haig was picked up in New Mexico several years later and waived extradition to Illinois. Haig pled guilty to the murder of Kenneth Glabe and was sentenced to 14–28 years incarceration in exchange for his plea and his truthful testimony at the Links' trial. The Links were convicted and the Illinois Appellate Court affirmed. *People v. Link*, 100 Ill.App.3d 1000, 56 Ill.Dec. 394, 427 N.E.2d 589 (1981). The Links sought and were denied state post-conviction relief.

### THE CONVERSATION WITH PELLETIERE

Haig testified on direct examination that he had discussed the murder plan, prior to its commission, with his girlfriend Jeanine Pelletiere. Pelletiere also testified to the conversation, corroborating Haig's general testimony as to the particulars of the crime and the fact that it had been committed pursuant to "contract." Haig and Pelletiere were allowed to testify to the conversation over the hearsay objection of defense counsel. The trial court ruled that the conversation was admissible as non-hear-

say attributable to a co-conspirator. The Illinois Appellate Court disagreed, finding that the conversation was not admissible since it was not "in furtherance of the conspiracy." *People v. Link*, 100 Ill. App.3d 1000, 1006, 56 Ill.Dec. 394, 398, 427 N.E.2d 589, 593 (1981). The appellate court affirmed the trial court's ruling, however, on the alternate ground that the conversation could have been admitted as a prior consistent statement. The appellate court found that during the cross-examination of Haig, defense counsel implied that Haig had recently fabricated his testimony and that therefore, the conversation between Haig and Pelletiere was admissible as a prior consistent statement to rebut a charge of recent fabrication. *Id.* Petitioners do not challenge this ruling, except to the extent that the appellate court's affirmance on other grounds violated their rights to due process under the circumstances of this case.

■ Although an appellate court may affirm a trial court based on grounds not relied upon by the trial court (*See, e.g., People v. Royse*, 107 Ill.App.3d 326, 331, 63 Ill.Dec. 30, 35, 437 N.E.2d 679, 684 (1982), *rev'd on other grounds*, 99 Ill.2d 163, 75 Ill.Dec. 658, 457 N.E.2d 1217 (1983); *Chicago Area Recycling Group v. Illinois Commerce Comm'n*, 58 Ill.App.3d 769, 773, 16 Ill.Dec. 233, 237, 374 N.E.2d 1008, 1011 (1978)), petitioners claim that a denial of due process results when the basis of the appellate court's reasoning would not exist but for the erroneous ruling of the trial court. Petitioners argue that they would not have alleged recent fabrication in cross-examining Haig if the trial court had not erroneously ruled that it would let the conversation in as co-conspirator's statements. Petitioners' due process claim therefore rests on the proposition that if the trial court had not ruled the conversation admissible as a co-conspirator's statement, defense counsel would have cross-examined Haig more narrowly—or perhaps not at all.

Petitioners assert that "[h]ad the trial judge correctly ruled that Haig's conversations with Pelletiere were not statements

of a co-conspirator in furtherance of a conspiracy, defense counsel clearly aware of the recent fabrication rule, certainly would not have asked any questions suggesting recent fabrication." (Appellants' Brief at 10.) We find this assertion implausible and not supported by the record. At the close of the trial defense counsel presented the following statement to the court concerning his cross-examination of Haig:

> The defense conducted their cross-examination based on [the court's ruling that the conversation would be admissible as a co-conspirator's statement] *or that portion of evidentiary law which allows the introduction of prior consistent statements;* therefore the witness Haig was never inquired of as to the fact that the sentence which he received was the minimum possible under the law at that time.
>
> He was never questioned with respect to the fact that the statement given in 1979 contains in his handwriting "This statement is the truth, to the best of my knowledge," or "To the best of my knowledge this statement is true," words to that effect.

(Tr. 792–793) (emphasis added). Thus, defense counsel was well aware of the possibility that the conversation could come in as prior consistent statements and had structured his cross-examination of Haig to avoid the application of the recent fabrication rule to permit Pelletiere to testify as to the full conversation. The trial court ruled, however, that the cross examination had implied recent fabrication and this ruling is not challenged here. Moreover, on direct appeal, appellate defense counsel argued that Haig's cross-examination did *not* create the inference of recent fabrication. Rather than demonstrate that counsel would have acted differently if not for the erroneous ruling, the record shows that defense counsel would have done nothing differently.

Haig's testimony convicted petitioners. The case against the Links turned on whether the jury would believe Haig's story that Mitchell Link hired him to kill his girlfriend's husband and that the plot required the complicity of Karen Link. It is inconceivable to us that the defense would not have suggested recent fabrication to attack Haig's credibility. Petitioners do not allege a different defense tactic and we can think of none. While it is true that Haig testified to the conversation during his direct examination and before defense counsel had suggested recent fabrication, the evidence would have been presented to the jury in any case; the convoluted order of the testimony alone cannot support a claim that petitioners were denied due process of law. Therefore, we find no constitutional violation arising from the Illinois Appellate Court's affirmance on other grounds.

## NON–VERBAL STATEMENTS OF KAREN LINK

At trial, Lake County Sheriff's Policeman Louis Harceg testified, without objection, that when he told Karen Glabe Link that Kenneth Glabe was alive, she was startled. Since Harceg knew at the time that Kenneth Glabe was in fact dead, Karen Link contends that his deliberate lie was designed to elicit an incriminating response and that the reaction was admitted into evidence in violation of· *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Similarly, petitioner Karen Link objects to the trial court's admission of testimony that Karen Link showed no reaction when she was taken to the morgue just hours after the murder, and showed Kenneth Glabe's uncleaned corpse.

The district court found that petitioners had waived the arguments by failing to object to the testimony at trial. The failure to object at trial is a procedural default which precludes subsequent review unless the petitioner can show "cause" and "prejudice" for the default. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Petitioner Karen Link contends that the district court erred in relying on defense counsel's waiver of the objection at trial, because the Illinois Appellate Court addressed the merits of peti-

tioner's claim. A state may excuse a procedural default by addressing the claim on its merits. *See, e.g., County Court of Ulster County v. Allen,* 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979); *United States ex rel. Merneigh v. Greer,* 772 F.2d 322, 325–26 (7th Cir.1985). Here, however, both trial and appellate counsel for the defense failed to raise the issue, constituting a double procedural default. It was not until petitioners filed their state petition for post-conviction relief that the admission of Karen Glabe's non-verbal statements was questioned. Then, as now, the merits of the contention were addressed only to determine whether Karen Glabe had waived her right to present such claims and whether she was denied effective assistance of counsel. The State did not, therefore, excuse the procedural default and petitioner must still show "cause" and "prejudice" for the failure to object.

Petitioner cannot demonstrate prejudice from counsel's failure to object unless there is a legally supportable argument for excluding the statements. Thus, for the limited purpose of determining whether petitioner can show prejudice from the failure to object at trial, we examine the merits of petitioner's claim. Petitioner claims that testimony regarding her "startled" response on hearing that her husband was alive, and her lack of emotion upon seeing her husband's corpse were introduced into evidence in violation of her *Miranda* rights. *Miranda* deals only with "the admissibility of statements obtained from an individual who is subjected to custodial police interrogation." *Id.,* 384 U.S. at 439, 86 S.Ct. at 1609. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444, 86 S.Ct. at 1612; *Oregon v. Mathiason,* 429 U.S. 492, 494, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977). Coercive police activity is "a necessary predicate to

the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly,* —— U.S. ——, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Just after the murder, Officer Harceg met Karen Link at Zion Hospital and engaged her in conversation. Karen Link was not under arrest at that point nor is there evidence that her freedom was restricted in any way. Similarly, there is no evidence in the record that Karen Link's trip to the morgue was coerced in any way. Therefore no objection based on petitioner's *Miranda* rights would have been sustained. Because petitioner's argument on the merits is unsupportable, she cannot show prejudice resulting from counsel's failure to raise the issue earlier. Her objection to the admission of the testimony is rejected.[1]

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's final contention is that trial and appellate counsel were ineffective. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To warrant reversal of their convictions, petitioners must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that petitioners were prejudiced by trial counsel's failure. *Id.* at 687–88, 104 S.Ct. at 2064–65.

Petitioners allege four errors to support their claim of ineffective assistance of trial counsel. We will address each separately. First, petitioners allege that trial counsel was ineffective in not moving to recuse Judge McQueen. Petitioners claim that Supreme Court Rule 67 mandated recusal. The relevant portion of the rule provides

---

1. Petitioners' inability to show prejudice from trial counsel's failure to object similarly dooms her argument that trial counsel was ineffective in failing to object. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

that "[a] judge shall not participate in any case in which he has previously acted as counsel." Ill.Ann.Stat. ch. 110A, para. 67(c) (Smith-Hurd 1985). While an assistant state's attorney, Judge McQueen appeared before the grand jury investigating Karen and Mitchell Link. Judge McQueen had no independent recollection of having appeared before the grand jury. He had apparently assisted in the preparation of a memorandum which was inspected by trial counsel. Trial counsel determined that the memorandum was innocuous and that there was no need for Judge McQueen's recusal; he therefore waived any objection to Judge McQueen presiding over the case. The memorandum in question has since been lost.

■ Rule 67(c) does not allow waiver of recusal by counsel. If the judge acted "as counsel", recusal is mandatory. In denying post-conviction relief, the Illinois Appellate Court found that petitioners had not shown that Judge McQueen acted as counsel. The federal district court agreed and rejected petitioners' ineffective counsel claim based on recusal. Petitioners have presented no authority to support their position that Judge McQueen's minor participatory role amounted to acting "as counsel" under the terms of Illinois Supreme Court Rule 67(c) and we have found none. Illinois courts have rejected the rule that recusal is mandatory "if the trial judge was in any way associated with the case." *People v. Lipa*, 109 Ill.App.3d 610, 613, 65 Ill.Dec. 207, 209, 440 N.E.2d 1062, 1064 (1982); *see also People v. Burnett*, 73 Ill. App.3d 750, 754, 29 Ill.Dec. 678, 681, 392 N.E.2d 235, 238 (1979). Judge McQueen's participation in the grand jury proceedings appears minimal. He disavowed any memory of the case. Trial counsel made adequate inquiry into the facts surrounding Judge McQueen's prior participation in the case and determined not to pursue recusal. There is nothing in the record to support a determination that the lost memorandum was anything but innocuous. More importantly, petitioners can show no prejudice resulting from trial counsel's failure to seek recusal. The Illinois Appellate Court

addressed the issue and found that Judge McQueen had not acted as counsel. Had trial counsel doggedly pursued recusal the result would have been the same. Hence, we cannot find ineffective assistance of counsel based on trial counsel's failure to move for recusal.

Next, petitioners contend that trial counsel was deficient in not moving for a change of venue, in failing to move to have the jury sequestered and in failing to have the *voir dire* examinations transcribed. All of these errors are based on petitioners' contention that trial publicity was so extensive as to cause the jurors to be biased against petitioners. To find that trial counsel was ineffective we would have to find that the facts then available would have caused a reasonable attorney to move for a change of venue, sequester the jury and transcribe the *voir dire*, and that the failure to do so prejudiced petitioners. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65.

■ The publicity surrounding the trial was not so extensive as to warrant a change of venue. Mere adverse pretrial publicity is not sufficient to show bias. *People v. Gendron*, 41 Ill.2d 351, 243 N.E.2d 208 (1968), *cert. denied*, 396 U.S. 889, 90 S.Ct. 179, 24 L.Ed.2d 164 (1969); *People v. Knippenberg*, 70 Ill.App.3d 496, 26 Ill.Dec. 805, 388 N.E.2d 806 (1979). Petitioners showed that eleven adverse newspaper articles were published in the area over a six-month period of time. This is not the extensive publicity which deprived the defendants of a fair trial in *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) and *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), both heavily relied on by petitioners. Most destructive to petitioners' claim is that the most recent pretrial article appeared a full eight months before trial. These facts would not lead a reasonable attorney to move for change of venue and petitioners have not shown that the newspaper articles actually biased any juror.

Petitioners claim they are hamstrung in their efforts to show actual bias of the jurors because trial counsel never had the *voir dire* transcribed. Failure to transcribe a portion of the record is not, in itself, ineffective assistance of counsel in the absence of any showing that the transcription would have revealed some impropriety. As the district court noted, petitioners themselves were present during the *voir dire* but have not presented one specific allegation of a suspect response or question on which to base a belief that a single juror was biased. We simply cannot find that counsel should have moved to change venue or directed the transcription of the *voir dire* based on this record. Similarly, we cannot find that counsel was inadequate for failing to move to have the jury sequestered during trial. The trial court often admonished the jury to avoid reading newspaper articles or listening to radio reports regarding the trial. Petitioners have shown only that one newspaper story appeared each day for the duration of the trial. They have not shown that the court's admonitions were inadequate or that any juror disregarded those admonitions. We therefore find no basis for concluding that trial counsel's conduct fell below a minimum standard of competency.[2]

Petitioners also allege that their appellate counsel was ineffective for failing to raise (1) the improper admission of Karen Link's non-verbal statements, (2) the recusal of Judge McQueen and (3) the ineffective assistance of trial counsel. Because we have not found any of these issues to be viable, we find no support for this claim. The judgment of the district court is

AFFIRMED.

---

2. Petitioners contend that the district court should have held a hearing to determine the competency of counsel. This is not required when competency can be determined as a matter of law. *Strickland,* 466 U.S. at 700, 104 S.Ct. at 2071.