THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. THOMAS VAN MIDDLESWORTH, Defendant-Appellee.

Third District   No. 3—88—0269

Opinion filed January 30, 1989.

Joan Scott, State's Attorney, of Lewistown (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Ronald L. Hamm, of Hamm & Hanna, Ltd., of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

On November 10, 1987, the defendant, Thomas Van Middlesworth, was charged with one count of unlawful possession of cannabis and one count of unlawful possession of cannabis with the intent to deliver. On April 15, 1988, the trial judge granted a motion to suppress in favor of the defendant. The State appeals from the granting of the motion, and we reverse.

At the hearing on the motion, the defendant testified that on November 9, 1987, a fire started in the living room of his house. The fire department responded to his call and put out the fire before it spread beyond the living room. The defendant stated that after the fire was extinguished, he attempted to return inside, but was not allowed to do so. Through the window, the defendant observed four or five firemen searching through the dresser in the bedroom. The firemen found cannabis which was lying on top of one dresser covered with a paper bag.

The defendant further testified that police investigator Dean Putnam told him that the defendant would be arrested for possession of cannabis. The defendant consented to a search of his house because he believed that the men had already found all of the cannabis.

Police officer John Harmon testified that he responded to the fire call that evening. He aided the firemen by placing a spotlight on the residence and controlling the crowd. After the fire was extinguished, he entered the house to speak with Assistant Fire Chief Norman Hamilton. While he was waiting to talk to Hamilton, he heard a bird chirping in the bedroom. He looked over and saw a white ceramic pipe with a design on it on top of a dresser. In his opinion, such a pipe was com-

monly used for smoking cannabis. He walked over to the pipe and saw a bowl containing a green, leafy substance that appeared to be cannabis.

Officer Harmon requested that an investigator be sent to the scene. When Investigator Dean Putnam arrived, Harmon informed him of the pipe and cannabis. After speaking with the defendant, Putnam searched the house and found additional cannabis in the bedroom. All of the cannabis and related materials were seized by the police.

Assistant Fire Chief Norman Hamilton testified that he was in charge of the firemen that evening. According to Hamilton, Officer Harmon's duty, as was customary, was to control the scene. Normally, after a fire is extinguished the police officer in control of the scene asks the fireman in charge if the police can clear the scene.

Hamilton further testified that after the fire was extinguished, he and the other firemen began ventilating the house by opening the windows. When Hamilton went into the bedroom to open the window, he noticed a green leafy substance in a bag on top of a dresser along with a scale. He did not immediately tell a police officer about his discovery, but discussed it with Officer Harmon after Harmon had seen the cannabis. To Hamilton's knowledge, none of the firemen had searched the defendant's dressers.

Investigator Dean Putnam testified that he entered the residence and spoke with Officer Harmon and Assistant Chief Hamilton. They informed him of the suspected cannabis in the bedroom. After looking in the bedroom, Putnam went outside and asked the defendant for consent to search his home. Putnam told the defendant that cannabis had been found in the house and that if they did not obtain consent the police would apply for a search warrant. The defendant consented to the search of his house. Putnam searched the house and found more cannabis in the bedroom.

The trial judge suppressed the cannabis and related materials, finding that Officer Harmon should not have entered the residence and, even if his entry was lawful, he should not have entered the bedroom to investigate the pipe. The State argues on appeal that Officer Harmon's actions did not violate the fourth amendment and that the police properly searched the defendant's home pursuant to his consent.

■ The standard for reviewing a motion to suppress is whether the trial judge's order was manifestly erroneous. (*People v. Holloway* (1980), 82 Ill. App. 3d 703, 402 N.E.2d 878.) Reasonable expectations of privacy may remain in fire-damaged premises. (*Michigan v. Tyler* (1978), 436 U.S. 499, 56 L. Ed. 2d 486, 98 S. Ct. 1942.) The constitutionality of warrantless and nonconsensual entries into fire-damaged

premises turns on several factors: whether there are legitimate privacy interests in the fire-damaged property that are protected by the fourth amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity. *Michigan v. Clifford* (1984), 464 U.S. 287, 78 L. Ed. 2d 477, 104 S. Ct. 641.

■ In determining whether Officer Harmon was properly inside the residence, we are guided by the supreme court's opinion in *People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409. There, the court held that a police officer who had entered an apartment to help fight a fire properly seized evidence of criminal activity found in plain view. Although the circumstances in the instant case were less exigent, we believe that the same reasoning applies. We find that Officer Harmon lawfully entered the premises pursuant to his duties at the fire scene.

■ We must also determine whether Officer Harmon properly entered the bedroom to look at the pipe. The plain view exception to the fourth amendment warrant requirement permits a law enforcement officer to seize incriminating evidence found in plain view when it is discovered in a place where the officer has a right to be. (*Washington v. Chrisman* (1982), 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812.) Officer Harmon testified that while waiting to speak to Assistant Chief Hamilton, he inadvertently noticed a ceramic pipe on the dresser in the bedroom. In his experience as a police officer, he believed that such a pipe was commonly used for smoking cannabis. We find that he properly entered the bedroom to inspect the pipe. His viewing of the cannabis lying next to the pipe was also proper under the plain view doctrine.

■ Finally, we hold that the cannabis and related materials seized after the defendant consented to the search of his home were properly admissible. A defendant may consent to a search conducted without a warrant but, in order for the consent to be considered a waiver of his fourth amendment rights, the State must prove by a preponderance of the evidence that the consent was voluntarily given. (*People v. Smith* (1984), 124 Ill. App. 3d 914, 464 N.E.2d 1206.) We have found no police activity that would have rendered the defendant's consent involuntary.

Accordingly, the judgment of the circuit court of Fulton County is reversed.

Reversed.

BARRY and HEIPLE, JJ., concur.